## Case No. 16,786.

UNITED STATES v. ZEREGA.

[Betts' Scr. Bk. 535.]

District Court, S. D. New York.   March 31, 1856.

DISCHARGE IN BANKRUPTCY—CLAIMS OF UNITED STATES.

[A discharge under the bankruptcy act of 1842 covered a debt due to the government on account of customs duties.]

On the 4th of July, 1840, 10th of August, 1840, 2d of September, 1840, 7th of October, 1840, 9th of November, 1840, 1st of December, 1840, and 5th of January, 1841, various judgments, amounting in all to 23, were obtained in this court, in favor of the United States, against the defendant [Augustus Zerega], on bonds executed by him to secure the payment of duties which had accrued upon importations of dutiable articles into this port. Executions of fieri facias had been issued by the plaintiff on several judgments, and returned by the marshal unsatisfied. On the 3d day of August, 1842, the defendant was duly declared a bankrupt, and received his certificate of discharge thereupon, pursuant to the provisions of the banking act, approved August 19, 1841. On the 23d of June, 1842, the plaintiff, through the United States attorney of this district, filed proof of debt in their behalf, consisting of the above 23 judgments. On the 3d of November, 1855, the plaintiff caused alias writs of fieri facias to be issued on these judgments, and to be delivered to the marshal of this district, who proceeded to make service thereof, and attach the property of the defendant. Thereupon the defendant served notice upon the district attorney of a motion to be made to this court for an order to set aside these executions and proceedings, or for a perpetual stay thereof.

BETTS, District Judge. This motion was brought to final hearing at the present term. The discussion of principles embraced in the application, and of the authorities quoted by the respective parties on the argument, will merit a more detailed examination than can be now conveniently given in writing. The present decision will accordingly set forth no more than the general conclusions to which

the court has arrived, upon consideration of the main points in controversy.

1. The court can regularly and properly take cognizance of this subject-matter, on motion, and grant relief, if a sufficient case is made for it. In many states of the Union, the proceeding by audita querela is obsolete, and there is ground at least for doubt whether audita querela, being an action with the properties and effect of a regular suit, can be maintained against the United States on the principles which govern that peculiar remedy, it being designed to afford a coercive judgment in damages by injunction against the party sued thereby.

2. The United States, when suitors in their own courts, seeking to enforce demands against individuals by use of the functions of courts of justice, are subject to the same rules of decision and limitation of remedies as are private parties, unless they have provided themselves exemptions or privileges by positive law, or unless they establish a prerogative or government exception in their own behalf. The advantage they possess over individual creditors, in celerity of processes or priority of payment against their common debtors for the recovery of debts, does not rest in prerogative, but is derived from statutory enactments alone.

3. The exceptional instances in which it has been held by the United States courts that the government is not bound by statutes of limitation, unless expressly named in them, establish no general principle upholding a prerogative of exemption from the operation of bankrupt or insolvent laws; the decisions not having been made in respect to laws of the United States, but to state statutes which become applicable only as rules of decision in the national courts.

4. The judgments and executions now sought to be enforced by the United States represent amounts of duties which had accrued on importation of merchandise into this port, and remained unsatisfied to the government. There is no inherent power in the government, without legislation, to constitute these causes of action debts, or to compel the payment of duties. They become debts, and are collected by process of law, solely by force of statutes. Natural reason would indicate that the legislative power is also competent to bar or extinguish the debt, or the means of enforcing it, without naming or referring to the government in the act. A debt, simply as such, to the government, for the purchase of property, or on obligation of suretyship, communicates no privilege superior to what individual creditors possess. It cannot arrest and imprison its debtors, in such cases, without producing direct warrant of law therefor; and there is strong parity of legal reason for holding that the government cannot, without a special reservation by statute, set up a claim to judgments, as subsisting in its favor, which it has by law made void or inoperative by a general enactment.

5. But the American cases, and even those of England, which assume an implied prerogative in the sovereign not to be barred by insolvent laws or statutes of limitation, when not named therein, concede that the intention of the legislature that such laws shall also embrace the government may be implied, and is to be ascertained and determined by the ordinary rules for the construction of statutes.

6. The presumption, from the provisions of the bankrupt act of August 19, 1841 [5 Stat. 440], and from facts preceding and concomitant to its passage,—the petitions, proceedings in congress-debates in both houses, and the acts of the government after it went into operation,—is exceedingly forcible that the intention of the enactment was that it should operate alike upon debts due the United States and individuals.

7. The amount of indebtedness pressing upon the community at the period was enormous. In this district alone, the sum inventoried in the bankrupt court, and affected by the act, as appears by the files of the court, was $120,580,415.

8. The United States, in their fiscal dealings, were brought to know the general pressure and embarrassments throughout the community, especially that of their particular debtors. During the years 1838, 1839, 1840, and to August, 1841, the government had instituted in this district 2,028 actions upon customhouse bonds. In the same period, judgments had been rendered in their favor, for duties unpaid at the maturity of the bonds, to the sum of $898,433.29, besides costs.

9. The bankrupt act [of 1841 (5 Stat. 440)] declares the certificate and discharge of the bankrupt, when duly granted, shall, in all courts of justice, be deemed a full and complete discharge of all debts, contracts, and other engagements of such bankrupt which are provable under the act, and provided for a ratable distribution of the bankrupt's property among creditors, reserving a priority or preference to the United States, and persons who have paid the bankrupt's debts to the United States, as his sureties, out of the assets held by his assignees.

10. In the prior bankrupt act, approved April 4, 1800 [2 Stat. 19], it was expressly enacted, its provisions should not lessen nor impair any right to, or security for, money due to the United States. That clause is omitted in the re-enactment of the body of the same section in the act of 1841.

11. The debts composing the judgments in question are provable under the bankruptcy of the defendant. The term "provable" refers to the quality and character of the debt, and not to the means of verifying it.

12. These debts were proved by the U. S. attorney of this district, and his authority to do so will be implied (if it does not result legally from his official relation to the subject-matter) at this period of time, after the act done. This strongly implies the understanding of the government that the certificate of

discharge was to bar public debts, alike with private ones.

Upon the merits of the case, upon the law and facts disclosed upon this motion, the plaintiffs are, in my judgment, barred and concluded from proceeding against the defendant upon the executions now issued, in the hands of the marshal. It is therefore ordered that all further proceedings thereon be stayed, and that the marshal deliver up and restore to the defendant, or his lawful attorney or agent, all property levied upon or seized by means of said executions, or any of them.